Filed 11/6/14  P. v. Garcia CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DERIK CARL GARCIA,<br><br>    Defendant and Appellant. | D066205<br><br><br><br>(Super. Ct. No. FSB1001603) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Harold T. Wilson, Jr.  Judge.  Reversed in part, affirmed in part as modified, and remanded with directions.

Law Offices of Russell S. Babcock and Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A San Bernardino County jury found Derik Carl Garcia guilty of committing three felony offenses against 65-year-old Chong Slonecker at her massage parlor in Highland: (1) attempted second degree robbery (count 4: Pen. Code,[1] §§ 664, 211); (2) elder abuse (count 5: § 368, subd. (b)(1)); and (3) assault by means of force likely to produce great bodily injury (count 6: § 245, subd. (a)(1)).[2] The jury also found true the allegations under section 12022.53, subdivision (b) (hereafter referred to as section 12022.53(b)) in counts 4 and 5 that Garcia personally used a firearm during the commission of the attempted robbery and the elder abuse. The trial court thereafter found true allegations that Garcia had suffered both a prior strike within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)(1)) as a result of his 2001 conviction of second degree robbery.

Garcia thereafter filed an opposed motion for new trial, claiming (among other things) that the legal representation his trial counsel, James Gass, provided was prejudicially ineffective in several respects. Following an evidentiary hearing at which Gass and two other witnesses testified, the court denied Garcia's new trial motion.

At the sentencing hearing in February 2013, the court denied Garcia's opposed motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) (hereafter referred to as Garcia's *Romero* motion) to strike his prior strike conviction and sentenced him to an aggregate state prison term of 19 years. The sentence consisted of

---

[1] All further statutory references are to the Penal Code.

[2] The jury acquitted Garcia of three counts of robbery allegedly committed at the Smart Time Food Store in Grand Terrace, as charged in counts 1 through 3.

the middle term of two years doubled to four years under the Three Strikes law for Garcia's attempted robbery conviction (count 4); plus a consecutive term of 10 years for the count 4 personal-use-of-a-firearm enhancement under section 12022.53(b); plus a consecutive term of five years under section 667, subdivision (a)(1), for the prior felony conviction.[3]

Garcia appeals, raising three principal contentions.  First, he contends his convictions and related firearm enhancements must be reversed because his trial counsel failed to effectively represent him in violation of his right to competent counsel under both the Sixth Amendment to the federal Constitution and the California Constitution by (1) not adequately investigating the case, (2) not requesting all applicable jury instructions, and (3) not calling all relevant witnesses.  Second, he contends the court abused its discretion by denying his *Romero* motion to strike his prior strike robbery conviction.  Last, he contends the jury's true finding on the count 5 section 12022.53(b) personal-use-of-a-firearm enhancement allegation attached to the elder abuse charge (count 5) must be vacated because that subdivision on its face does not apply to elder abuse.  Regarding this contention the Attorney General responds, and Garcia in his reply brief agrees, that the count 5 section 12022.53(b) firearm enhancement should be reduced

---

[3]    The court also imposed but stayed under section 654 the execution of (1) a term of two years for Garcia's elder abuse conviction (count 5), (2) a term of three years four months for the count 5 personal-use-of-a-firearm enhancement under section 12022.53(b); and (3) a term of two years for his count 6 conviction of assault by means of force likely to produce great bodily injury.

to the lesser included firearm enhancement under section 12022.5, subdivision (a) (hereafter referred to as section 12022.5(a)).

For reasons we shall explain, we modify Garcia's convictions by reducing the jury's true finding on the count 5 personal-use-of-a-firearm enhancement allegation under section 12022.53(b) to a lesser included violation of section 12022.5(a). We also vacate Garcia's sentence and remand the matter to the trial court for resentencing in light of the reduction of his count 5 firearm enhancement to a violation of section 12022.5(a). In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND[4]

A. *The People's Case*

In the afternoon on April 11, 2010, Garcia entered a massage parlor that then-65-year-old Slonecker owned and operated in Highland. Slonecker, who is Korean and testified with the assistance of a court-certified Korean interpreter, testified that as she was working there alone, Garcia walked up to the customer window behind which she was sitting, and, pretending to be a customer and talking to her through the window, asked her about prices and pulled out of his wallet his driver's license and what Slonecker thought was a credit card. Garcia suddenly grabbed her wrist through the window, pulled out a gun, pointed it at her, and demanded money. Garcia then asked her for some water,

---

[4] As Garcia was acquitted of the charges related to the Smart Time Food Store robberies, the following summary of the factual background is limited to crimes committed against Slonecker at her massage parlor.

and Slonecker told him he would have to let her go in order for her to get the water. When Garcia let go of her wrist, Slonecker ran towards the back door of her business.

Slonecker testified that Garcia kicked open a locked interior door and followed her. Slonecker ran to the back door screaming for help. Garcia caught her, grabbed her hair, dragged her into a bathroom, and then kicked her many times on her knees, face, and body. Garcia told her, "Stay there," and then closed the bathroom door and went back towards the front of the business. Slonecker tried to escape through the locked back door while screaming for help. Garcia followed her, but fled down an alley after she ran to a neighboring barber shop. Slonecker testified that Garcia was wearing black pants, a black shirt, and a black hat with "white writing" on it. Garcia got into a white minivan and quickly drove away.

Slonecker testified that, after she went back inside her business, she found Garcia's driver's license and Visa debit card, and also found a Visa debit card belonging to Julie Cantu, who is Garcia's mother. Detective Kari Klaus of the San Bernardino County Sheriff's Department testified that Slonecker gave her the driver's license and the two Visa debit cards.

Slonecker also testified that, after Garcia attacked her, Cantu went to Slonecker's business and physically tried to take the debit cards from her hand.

On cross-examination, Slonecker testified that Garcia's gun looked like a real gun, not a toy gun. She also testified that she never told anyone it looked like a toy gun.

5

Either late at night on April 11 or in the early morning hours of April 12, 2010, a white 2006 Nissan Quest minivan was parked in front of Cantu's house. The parties stipulated that Garcia's brother, Jesse Garcia, Jr., owned the minivan.

On April 12, the day after the attempted robbery, Detective Matthew Peterson of the San Bernardino County Sheriff's Department viewed a video from a surveillance camera owned by another business. He testified that the video showed a man running out of the back door of the massage parlor and then running northbound behind the businesses. He also testified that the man shown in the video was wearing a hat with a white patch or emblem.

B. *The Defense*

Lisa Hart, a defense investigator, testified she interviewed Slonecker and walked through the massage parlor in August 2011. Hart noticed a mattress on the floor of each of the back bedrooms, but she did not see any massage tables. Slonecker told Hart that Garcia had handed her an identification card and some credit-type cards, and he had asked Garcia for a glass of water. Slonecker described to Hart how Garcia kicked in the door between the waiting area and the area in the back, and then Slonecker showed the door to Hart.

Hart also testified that Slonecker said Garcia's gun "looked like a toy gun." On cross-examination, Hart acknowledged that she does not speak Korean, and she did not have a Korean interpreter with her when she spoke with Slonecker.

6

DISCUSSION

## I. *CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND CUMULATIVE ERROR*

Garcia claims his trial counsel, Gass, failed to effectively represent him in violation of his right to competent counsel under both the Sixth Amendment to the federal Constitution and the California Constitution.  Specifically, he contends his convictions and related firearm enhancements must be reversed because Gass (1) failed to adequately investigate Slonecker or her business, (2) failed to request a jury instruction on a lesser included weapons enhancement under section 12022, subdivision (b) (hereafter referred to as section 12022(b)), and (3) failed to interview Garcia's girlfriend and call her as a witness at trial.  Garcia also claims that, even if none of Gass's acts or omissions were prejudicial, the "cumulative effect of [his] errors . . . requires reversal of [Garcia's] convictions and the related firearm enhancement."  These claims are unavailing.

### A. *Applicable Legal Principles*

The law governing Garcia's ineffective assistance of counsel claim is settled.  A criminal defendant is constitutionally entitled to effective assistance of counsel.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 (*Strickland*); *People v. Frye* (1998) 18 Cal.4th 894, 979.)  To establish a denial of the right to effective assistance of counsel, a defendant must show (1) his or her counsel's performance was below an objective standard of reasonableness under

7

prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland*, at pp. 687, 691-692; *Frye*, at p. 979.)

To demonstrate prejudice, a defendant asserting an ineffectiveness claim on appeal must show a reasonable probability he or she would have received a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *People v. Frye*, 18 Cal.4th at p. 979.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

*Strickland* explained that "[j]udicial scrutiny of counsel's performance must be *highly deferential* [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (*Strickland*, *supra*, 466 U.S. at p. 689, italics added.) *Strickland* also explained that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Ibid.*)

The California Supreme Court has explained that "'[w]hen a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation. If the record sheds no light on why counsel acted or failed to act in the manner challenged, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" [citation], the contention must be rejected.'" (*People v. Kelly*

8

(1992) 1 Cal.4th 495, 520 (*Kelly*).)  Thus, "[a] reviewing court will not second-guess trial counsel's reasonable tactical decisions."  (*Ibid*.)

B.  *Analysis*

1.  *Claim that Gass provided ineffective assistance by failing to adequately investigate Slonecker or her business*

Garcia asserts that Gass failed to "properly impeach" the prosecution's complaining witness, Slonecker, and that his failure to do so was "largely attributable to his failure to investigate [Slonecker] or her [massage parlor] business thoroughly." Asserting that Gass "believed [Garcia's] claim that Slonecker sold sexual services rather than massages," Garcia points to Gass's testimony at the evidentiary hearing on Garcia's new trial motion that he (Gass) "doubted that [Slonecker's business] was a massage parlor" or "a legitimate business of any kind."  Also asserting that "evidence about Slonecker's business would have been useful not only to impeach Slonecker, but to explain [his] version of events," Garcia claims that,"[s]ince [Gass's] ineffective impeachment strategy resulted from his ineffective preparation and investigation, the quality of his representation fell below the established standards of effective representation by criminal defense counsel."

Garcia's first claim of ineffective assistance of counsel is unavailing.  Applying the "highly deferential" *Strickland* standard of judicial scrutiny, as we must (*Strickland*, *supra*, 466 U.S. at p. 689), we conclude that Garcia has failed to meet his burden of overcoming the "strong presumption" that Gass's "challenged action 'might be considered sound trial strategy.'"  (*Ibid*.)  Under the circumstances, Gass conducted a reasonably

9

thorough investigation of Slonecker and her business.  At the hearing on Garcia's new trial motion, Gass testified that he went to Slonecker's business three times and interviewed her with his defense investigator, Lisa Hart.  He indicated that he did not see any customers during his three visits to Slonecker's business, and he testified that Slonecker acknowledged that she had not had any customers on the day of the incident. Gass also indicated that he tried using a male "decoy" with "money in hand" to determine whether Slonecker's business was legitimate, but Slonecker turned the decoy away.

The record also shows that Gass made a reasonable tactical choice about both the extent of the investigation and how to proceed following this investigation.  At the hearing, Gass was asked whether it would have helped if he had found business records showing Slonecker's business was a licensed business in the [County] of San Bernardino. Gass replied:  "I think that issue kind of *cuts both ways*.  If we knew for sure it was a whorehouse, that hurts [Slonecker's] credibility, *but it also probably hurts* [*Garcia's*] *credibility*.  If we knew for sure she does Japanese massage, . . . then that makes him look like a more legitimate guy going there, *but it makes her look more legitimate*, too." (Italics added.)

It is apparent from Gass's foregoing testimony at the hearing on the Garcia's new trial motion, as well as from his closing argument later to the jury, that he made a reasonable tactical decision to limit the scope of the investigation and not make the nature of Slonecker's business a central theory of the defense.  During his closing argument, in an attempt to diminish Slonecker's credibility in the eyes of the jury, Gass did briefly suggest that the jury should not believe Slonecker's testimony because she was selling

10

sexual services. Specifically, he told the jury, "*I'm not going to argue that* [*Slonecker's business*] *is for sure a house of ill repute, but one thing's for sure*: It's an unusual massage parlor if all they are doing there is massages. And another thing is for sure if you conclude, which I suggest it's reasonable for you to conclude, that *they don't do just massages there. That's going to affect the credibility of Ms. Slonecker*; isn't it?" (Italics added.)

However, Gass's closing argument shows the central theory of the defense was that of mistaken identity. Early in his argument, Gass told the jury, "Unless you want to trust [Slonecker], *we don't know that* [*Garcia*] *was there*." (Italics added.) Referring to the robber as "John," Gass argued that "[w]e don't know for sure who the robber was" and "[m]aybe it was [Garcia], and maybe it was some other member of his family that had his I.D., and maybe he was up at the barber shop cutting hair like he has been for the last four years." Arguing that Garcia "[didn't] need to be robbing or attempting to rob anyone" because he was "making decent money" cutting hair, Gass urged the jury "to say, 'Yep. That leads us to only one reasonable conclusion: That [Garcia] is not the robber.'"

Gass continued to argue the central theory of mistaken identity by reminding the jury they had heard the testimony of the defense investigator who testified that Slonecker had demonstrated how the robber had handed the driver's license over to her. Gass asked the jury, "Why would a robber hand his driver's license to [Slonecker] and then pull out a gun and try to rob her or assault her? And the answer to that circumstantial evidence is: It doesn't fit with robbery. No robber would do that. No robber is that dumb. Unless, of

11

course, this was a robber with someone else's driver's license trying to implicate someone else and get people off his trail, so to speak."

In sum, we conclude the record shows that Garcia's counsel made a reasonable tactical decision to limit the scope of his investigation and not make the nature of Slonecker's business a central theory of the defense. We also conclude that Garcia has failed to meet his burden of overcoming the strong presumption that this challenged decision by Gass "'might be considered sound trial strategy.'" (*Strickland, supra,* 466 U.S. at p. 689.) We "will not second-guess trial counsel's reasonable tactical decisions." (*Kelly, supra,* 1 Ca1.4th at p. 520.)

2. *Claim that Gass provided ineffective assistance by failing to request a jury instruction on the lesser included personal-use-of-a-deadly-weapon enhancement*

We next address Garcia's claim that Gass provided ineffective assistance by failing to request a jury instruction on the the lesser included personal use of a deadly weapon enhancement set forth in section 12022(b). The jury found true the allegations in counts 4 and 5 that Garcia personally used a firearm during the commission of the attempted robbery and the elder abuse in violation of section 12022.53(b), which provides:

> "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a *firearm*, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply." (Italics added.)

"A BB gun or pellet gun is not a 'firearm' for purposes of sentence enhancements [citation], but is a 'dangerous weapon' as the term is used in section 12022[(b)]." (*People*

12

*v. Dixon* (2007) 153 Cal.App.4th 985, 1001.) Subdivision (b)(1) of section 12022 provides:

> "A person who personally uses a *deadly or dangerous weapon* in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." (Italics added.)

A section 12022(b) personal use of a deadly weapon enhancement is a lesser included offense of a section 12022.53(b) personal use of a firearm enhancement. (*People v. Dixon, supra,* 153 Cal.App.4th at p. 1001.)

Here, Garcia claims that Gass provided ineffective assistance by failing to request an instruction on the lesser included section 12022(b) personal use of a deadly weapon enhancement, and a pinpoint instruction that an imitation gun like a pellet gun does not qualify as a firearm under section 12022.53(b), because "the evidence at trial suggested that [he] may have used a fake gun" and "if the jury had concluded that [he] used a pellet gun rather than a real gun, he would have received a [one]-year instead of a 10-year consecutive sentence." Garcia's claim is unavailing.

Garcia asserts that "Slonecker's eyewitness testimony provided the only evidence that [he] used a real gun during the robbery." Indeed, Slonecker testified on cross-examination that Garcia's gun looked like a real gun, not a toy gun. She also testified that she never told anyone it looked like a toy gun. Garcia contends, however, that Slonecker's testimony about the gun was "equivocal" and points out that the defense investigator, Hart, testified that Slonecker told her that the gun looked like a toy gun.

13

As noted, *ante*, when a defendant makes an ineffectiveness claim on appeal, the reviewing court must look to see if the record contains any explanation for the challenged aspects of representation. (*Kelly*, *supra*, 1 Cal.4th at p. 520.) If the record sheds no light on why defense counsel acted or failed to act in the manner challenged, the claim must be rejected unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation. (*Ibid*.)

Here, the record is silent on why Gass did not request the lesser included section 12022(b) personal use of a deadly weapon enhancement. However, the record suggests a satisfactory explanation. As already discussed, Garcia's central defense at trial was the defense of mistaken identity. In other words, his defense was that he was *not present* at the time of the robbery at Slonecker's massage parlor and someone else committed the crimes. In light of this defense, an instruction on the lesser included section 12022(b) personal use of a deadly weapon enhancement and a pinpoint instruction that an imitation gun like a pellet gun does not qualify as a firearm under section 12022.53(b) would have undermined Garcia's mistaken identity defense by emphasizing not only that he might have been present at the time of the robbery, but that he was armed with a dangerous or deadly weapon. Thus, we conclude Garcia again has failed to meet his burden of demonstrating Gass's representation was unconstitutionally deficient.

3. *Claim that Gass failed to interview Garcia's girlfriend and call her as a witness at trial*

Garcia also claims Gass provided ineffective assistance by failing to independently interview Garcia's girlfriend, Nora Gallegos, and call her as a witness at trial. This claim

14

is unavailing because the record demonstrates that Gass's decision to not interview Gallegos or call her as a witness was a reasonable tactical decision that a reviewing court will not second guess. (See *Kelly*, *supra*, 1 Cal.4th at p. 520.)

Garcia acknowledges that Gass knew before trial that the police had interviewed Gallegos and she had told them that Garcia owned a BB or pellet gun. The record shows that, during his testimony at the hearing on Garcia's new trial motion, Gass indicated that Gallegos told the detectives that Garcia owned a black BB or pellet gun that resembled a real handgun.

The record of that evidentiary hearing also demonstrates that Gass made a reasonable tactical decision to not interview Gallegos or call her as a witness at trial because he felt confident that Garcia would be acquitted─as he eventually was (see fn. 2, *ante*)─of the three robberies committed at the Smart Time Food Store (counts 1-3, which are not at issue in this appeal), and he believed she would have "nothing to add" to the defense against the charges (counts 4-6) related to the incident at Slonecker's massage parlor. Specifically, the reporter's transcript of the new trial hearing shows that Gass testified as follows: "I was confident we were going to win . . . the three liquor store robberies, and she had nothing to add . . . on the massage parlor incident unless we were going to argue that [Garcia] was there and he did have a gun, but it was a pellet gun, which . . . he denied; and we're trying to avoid the attempted robbery charge, of course." Again, as already discussed, Garcia's central defense at trial was the defense of mistaken identity; that is, the defense that he was not at Slonecker's massage parlor at the time the crimes charged in counts 4 through 6 were committed. Given Garcia's defense to the

15

charges in counts 4 through 6, the record shows that Gass—knowing that Gallegos had made pretrial statements to the police that tended to incriminate Garcia—made a reasonable tactical decision not to interview her or call her as a witness at trial because her testimony would have undermined the defense theory that Garcia was not present during the commission of the crimes at the massage parlor.

For all of the foregoing reasons, we conclude Garcia has failed to meet his burden of establishing any of his claims of ineffective assistance of counsel.

4. *Claim of cumulative error*

Last, Garcia also claims that, "[a]ssuming that none of [Gass's] acts or omissions were prejudicial in isolation, the cumulative effect of [his] errors . . . requires reversal of [Garcia's] convictions and the related firearm enhancement." This claim is unavailing.

"If none of the claimed errors were individual errors, they cannot constitute cumulative errors that somehow affected the . . . verdict." (*People v. Beeler* (1995) 9 Cal.4th 953, 994, abrogated on other grounds as recognized by *People v. Pearson* (2013) 56 Cal.4th 393, 462.)

Here, we have concluded that all three of Garcia's claims of ineffective assistance of counsel are unavailing because Garcia has failed to show that Gass's performance was unconstitutionally deficient. Accordingly, we reject Garcia's claim of prejudicial cumulative error. (*People v. Beeler*, *supra*, 9 Cal.4th at p. 994.)

## II. *DENIAL OF GARCIA'S ROMERO MOTION*

Garcia next contends the court abused its discretion by denying his *Romero* motion to strike his prior strike conviction. We reject this contention.

16

A.  *Background*

1.  *Garcia's Romero motion*

In his written *Romero* motion, Garcia asked the court to strike his prior strike robbery conviction under section 1385 and *Romero*, *supra*, 13 Cal.4th 497.  Asserting that he did not have a significant prior criminal history, Garcia acknowledged he had suffered a June 2000 misdemeanor conviction for vandalism (§ 594, subd. (b)(4)), a July 2001 strike conviction robbery (§ 211), and a March 2007 misdemeanor conviction for driving without a valid license (Veh. Code, § 12500).  He argued he had pleaded guilty to the robbery offense, spent 34 days in jail, and successfully completed his probation term.

Acknowledging he was statutorily ineligible for probation following his current convictions, Garcia asserted he would have been a good candidate for probation because he was employed full time as a barber, he had lived a crime-free life since his 2001 robbery conviction, the victim in the current case "was not substantially harmed and no property was taken from her," and the circumstances of the current offenses were "not likely to reoccur."  He also asserted that he believed he had a claim of right to retrieve his identification and debit cards from Slonecker, but "perhaps [he] crossed the line in doing so by assaulting [Slonecker]."

Garcia further asserted he had no opportunity to admit his guilt at an early stage of the current prosecution because he been "unfairly targeted" by the district attorney's career criminal prosecution unit, which was statutorily prohibited from plea bargaining.

17

2. *The People's opposition*

In its written opposition, the prosecution argued that Garcia's *Romero* motion should be denied because his criminal history "[did] not support an exercise of [the] court's discretion of striking" Garcia's prior strike conviction. The prosecution also argued that Garcia "had not led a legally blameless life," and he had "multiple factors in aggravation" because he had used a deadly weapon in committing his current crimes, he was refusing to take responsibility for his actions as indicated in the probation report, and he admitted to the regular use of marijuana. The prosecution concluded by asserting it was appropriate for the court to deny Garcia's *Romero* motion because he is "a danger to society" who had received "ample warning through his past arrests and incarcerations that such criminal conduct was unacceptable," and he "has refused to change his behavior."

3. *Evidentiary hearing and ruling*

On the day set for sentencing, the court first conducted an evidentiary hearing on Garcia's *Romero* motion. In support of his motion, Garcia called three witnesses: Richard Alanis, Jr., a family friend; Garcia's brother, Jesse Garcia, Jr.; and Garcia's mother, Julie Cantu. Alanis opined that Garcia was not a violent person, and he had never known Garcia to carry weapons on a regular basis. Alanis testified that Garcia began attending The Ranch Program, a live-in recovery home program, following his 2001 robbery conviction. Alanis stated that Garcia completed the program and then participated in the Victory Outreach Urban Training Center, which was a program for young people who wanted to pursue a life of ministry. Garcia completed this program and received a graduation certificate.

Garcia's brother testified that he had never known Garcia to "be in a gang, running with gang members" and that he had never known Garcia to routinely carry a weapon. After his 2001 robbery conviction, Garcia spent two or three weeks in jail, but he did not go to prison, and he successfully completed his probation. Garcia's brother also testified that Garcia went to school to become a barber, and he was working for a barber. He testified that he did not know Garcia to be involved in any criminal activity such as robbery, and he believed Garcia was not a violent person.

Garcia's mother, Cantu, acknowledged that she was convicted of a related robbery in this case for trying to steal the identification and debit cards from Slonecker. Cantu testified that Garcia was not a violent person, and she never saw him carry a weapon. Cantu also testified that before he was arrested, Garcia had worked as a barber for five years, and he was not committing any crimes. Cantu acknowledged she did not know that Garcia was charged in 2007 with driving without a license.

In his closing argument, Garcia's counsel argued that except for the conviction of driving with a suspended license, Garcia was crime free after his 2001 robbery conviction. Counsel also argued that Garcia took significant steps towards changing his life that showed he was not the typical type of person who commits these crimes, and the prior and current robberies were not typical types of robberies. Garcia's defense in this case was that he was at the massage parlor to solicit a prostitute and, when he did not like what he saw, he just tried to get his identification and credit cards back from Slonecker. Counsel asserted that Garcia was crime free for 10 years, he then made a mistake, and the

19

Three Strikes law was not meant to apply to someone like him because he was not a "frequent flyer" criminal.

The prosecutor responded that there were only nine years between the two robberies that Garcia committed; Garcia admitted he was regularly using marijuana during that time period; and he was convicted in 2007 of driving with a suspended license, which was still suspended. The prosecutor asserted that Garcia's claim was similar to the defendant's claim in *People v. Williams* (1998) 17 Cal.4th 148, in that, although a span of time passed between the two serious crimes, Garcia "'failed to add maturity to time.'" The prosecutor argued that, here, Garcia committed a robbery, and he had committed another robbery nine years previously.

The prosecutor also pointed out that the probation report failed to consider an aggravating factor: the use of a deadly weapon. He argued that other aggravating factors placed Garcia within the scheme of the Three Strikes law: his victim was elderly and vulnerable, and he used violence causing injury.

a. *Ruling*

After noting it had reviewed all the moving papers, and it had considered the testimony of Garcia's three witnesses and had reviewed the exhibits submitted by the defense, the court denied Garcia's *Romero* motion.

B. *Applicable Legal Principles*

In *Romero*, *supra*, 13 Cal.4th at pages 529-530, the California Supreme Court held that section 1385, subdivision (a) (hereafter § 1385(a))[5] permits a court acting on its own motion and "in furtherance of justice" to strike prior felony conviction allegations in cases brought under the Three Strikes law. Although the Legislature has not defined the phrase "in furtherance of justice" contained in section 1385(a), the California Supreme Court has held that this language requires a court to consider both the " ' "constitutional rights of the defendant, and the interests of society represented by the People" ' " (italics omitted) in determining whether to strike a prior felony conviction allegation. (*Romero*, *supra*, 13 Cal.4th at p. 530.)

In *People v. Williams*, *supra*, 17 Cal.4th at page 161, the California Supreme Court explained that, in determining whether to strike or vacate a prior strike allegation or finding under the Three Strikes law "in furtherance of justice" pursuant to section 1385(a), the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

---

5    Section 1385(a) provides in part that a trial court "may, either of [its] own motion or upon the application of the prosecuting attorney, and *in furtherance of justice*, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes." (Italics added.)

In *People v. Carmony* (2004) 33 Cal.4th 367, 371, our high state court held a trial court's decision not to dismiss a prior strike conviction allegation under section 1385(a) is reviewed under the deferential abuse of discretion standard. *Carmony* explained that "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377.)

C. *Analysis*

Applying the deferential abuse of discretion standard, as we must (*People v. Carmony*, *supra*, 33 Cal.4th at p. 371), we conclude Garcia has failed to meet his burden on appeal of showing that the court's denial of his *Romero* motion was an abuse of discretion and that he should be deemed to be outside the spirit of the Three Strikes law. The record shows the court carefully considered the factors discussed in *Williams*: "[T]he nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) The record before the court demonstrated that, although Garcia committed only one other crime (misdemeanor driving without a valid license) during the nine years between his 2001 robbery conviction and his 2010 commission of his current felony offenses against Slonecker (attempted robbery, elder abuse, and assault by means of force likely to produce great bodily injury), Garcia had not learned from his prior convictions and in fact committed more serious crimes that involved the use of force likely to produce great bodily injury on his 65-year-old victim, Slonecker. Also before the court was the probation officer's assessment that Garcia, who refused to be interviewed about the circumstances of his

22

current offenses, "did not take responsibility for his actions."  As the record supports a finding that Garcia falls within the spirit of the Three Strikes law, we affirm the court's order denying his *Romero* motion.

### III.  *COUNT 5 FIREARM ENHANCEMENT*

Last, Garcia contends the jury's true finding on the section 12022.53(b) personal use of a firearm enhancement allegation attached to the count 5 elder abuse charge must be vacated because that subdivision on its face does not apply to elder abuse.  In response the Attorney General acknowledges, and Garcia in his reply brief agrees, that the count 5 section 12022.53(b) firearm enhancement should be reduced to the lesser included firearm enhancement under section 12022.5(a), and that Garcia's sentence should be corrected.  We agree.

Section 12022.53(b) provides in part:

> "Notwithstanding any other provision of law, any person who, in the commission of *a felony specified in subdivision* (*a*), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years."  (Italics added.)

Thus, the 10-year prison term enhancement provided in section 12022.53(b) only applies to a defendant who personally used a firearm to commit "a felony specified in subdivision (a)" of that section.

Here, the jury found that Garcia violated section 12022.53(b) by personally using a firearm in committing felony elder abuse against Slonecker in violation of section 368, subdivision (b)(1), as charged in count 5.  However, a violation of section 368, subdivision (b)(1), is *not* one of the felonies listed in subdivision (a) of section

23

12022.53.[6] Thus, as the firearm enhancement provided in section 12022.53(b) does not apply as a matter of law to a defendant like Garcia who commits felony elder abuse, we conclude his count 5 conviction of a violation of section 12022.53(b) is unlawful.

Accordingly, we must modify Garcia's convictions by reducing the jury's true finding on the count 5 personal use of a firearm enhancement allegation under section 12022.53(b)—for which the court (as noted in fn. 3, *ante*) imposed but stayed a consecutive prison term enhancement of three years four months—to the lesser included violation of section 12022.5(a).[7] In all other respects, we affirm Garcia's convictions in this matter.

We also must vacate Garcia's sentence and remand the matter to the trial court for resentencing in light of the reduction of his count 5 conviction of a violation of section 12022.53(b) to a violation of section 12022.5(a). Unlike the 10-year prison term

---

[6] Subdivision (a) of section 12022.53 provides: "This section applies to the following felonies: [¶] (1) Section 187 (murder). [¶] (2) Section 203 or 205 (mayhem). [¶] (3) Section 207, 209, or 209.5 (kidnapping). [¶] (4) Section 211 (robbery). [¶] (5) Section 215 (carjacking). [¶] (6) Section 220 (assault with intent to commit a specified felony). [¶] (7) Subdivision (d) of Section 245 (assault with a firearm on a peace officer or firefighter). [¶] (8) Section 261 or 262 (rape). [¶] (9) Section 264.1 (rape or sexual penetration in concert). [¶] (10) Section 286 (sodomy). [¶] (11) Section 288 or 288.5 (lewd act on a child). [¶] (12) Section 288a (oral copulation). [¶] (13) Section 289 (sexual penetration). [¶] (14) Section 4500 (assault by a life prisoner). [¶] (15) Section 4501 (assault by a prisoner). [¶] (16) Section 4503 (holding a hostage by a prisoner). [¶] (17) Any felony punishable by death or imprisonment in the state prison for life. [¶] (18) Any attempt to commit a crime listed in this subdivision other than an assault."

[7] Section 12022.5(a) provides: "Except as provided in subdivision (b), any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

24

enhancement provided in section 12022.53(b), the punishment for a violation of section 12022.5(a), with an exception not applicable here, is "an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years." (§ 12022.5(a).)

## DISPOSITION

Garcia's count 5 conviction of a violation of section 12022.53(b), which is related to his count 5 conviction of felony elder abuse (§ 368, subd. (b)(1)), is modified and reduced to a lesser included violation of section 12022.5(a). Garcia's sentence is vacated and the matter is remanded to the trial court for resentencing in light of the reduction of his count 5 conviction of a violation of section 12022.53(b) to a violation of section 12022.5(a). In all other respects, the judgment is affirmed. The trial court is directed to amend the abstract of judgment following resentencing to reflect the modification of Garcia's count 5 personal-use-of-a-firearm conviction and any change in his sentence, and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.